# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 14-2220

David Zink, et al.

Appellants

Richard Strong and Marcellus S. Williams

Intervenors

v.

George A. Lombardi, et al.

Appellees

_____

Appeal from U.S. District Court for the Western District of Missouri - Jefferson City
(2:12-cv-04209-BP)
_____

**ORDER**

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges, En Banc.

The court, on its own motion, orders that Christeson's motion for a stay of execution be heard en banc. The motion for stay of execution is denied.

Judge Murphy, Judge Bye, and Judge Kelly vote to grant the motion for stay of execution. Judge Benton did not participate in the consideration or disposition of this matter.

BYE, Circuit Judge, dissenting, with whom Judge Murphy and Judge Kelly join.

I would grant a stay of execution to Mark Christeson.

Members of this court have repeatedly made clear a state executing its citizens needs to provide adequate information to death row inmates regarding the manner of their executions so they may determine whether or not their Eighth Amendment rights are being violated. See, e.g., In re Lombardi, 741 F.3d 888, 898 (en banc) (Bye, J., dissenting), cert. denied, 134 S. Ct. 1790 (U.S. 2014), reh'g denied, 741 F.3d 903 (8th Cir. 2014); Bucklew v. Lombardi, 565 F. App'x 562, 564 (8th Cir. 2014), vacated on reh'g en banc (May 20, 2014), cert. dismissed, 134 S. Ct. 2832 (U.S. 2014); Zink v. Lombardi, 756 F.3d 1123, 1123 (8th Cir. 2014) (en banc) (Bye, J., dissenting) (execution of Michael Worthington). "The Eighth Amendment prohibits the unnecessary and wanton infliction of pain through torture, barbarous methods, or methods resulting in a lingering death." Taylor v. Crawford, 487 F.3d 1072, 1082 (8th Cir. 2007). In regards to this month's iteration of Missouri's execution practice, Christeson seeks a stay of his execution. Christeson raises concerns about the drug to be used in his execution, and whether the drug will result in pain or a lingering death. Christeson also raises concerns about the administration of a sedative before his execution begins and whether the sedative will be administered safely.

To begin, Christeson has met the pleading requirements this court set forth in In re Lombardi, 741 F.3d 903, 904 (8th Cir. 2014) (en banc). In re Lombardi requires plaintiffs, in their pleadings, to (1) "concede[] that 'other methods of lethal injection the Department could choose to use would be constitutional,'" id. at 905 (quoting Hill v. McDonough, 547 U.S. 573, 580 (2006)); and (2) "allege[] 'that the challenged procedure presents a risk of pain the State can avoid while still being able to enforce the sentence ordering a lethal injection,'" id. (quoting Hill, 547 U.S. at 581). Thus, Christeson's request for a stay is not, as suggested by Missouri, barred by pleading requirements.

Regarding the constitutionality of the current execution protocol, Missouri argues Christeson needs no further review of execution procedures and Missouri need not change or better-administer those execution procedures because prior executions have been rapid and painless. This assertion is not persuasive. Numerous death row inmates have constantly and continuously asked Missouri to provide any information regarding the drugs to be used in execution. Inmates have also repeatedly asked for the ability to test those drugs, or at least have access to test results. Missouri, despite using compounded pentobarbital (which, notably, uses components from unknown sources and is compounded by an unknown alleged pharmacy), refuses to conduct or allow any testing of the alleged pentobarbital.

Even if the alleged compounded pentobarbital used in prior executions did, in fact, effect rapid and painless executions, Christeson has no indication, from Missouri or any other source, his execution will be the same. Because of the dearth of information on the alleged compounded pentobarbital, Christeson and this court have no idea (1) whether the drugs used to create the alleged compounded pentobarbital to be used to execute Christeson are from the source

used previously; (2) whether the drugs used to create the alleged compounded pentobarbital have been stored in the same conditions for the same amount of time as the drugs previously used; (3) whether the same compounding pharmacy has compounded each of the prior doses and whether the same compounding pharmacy will compound the dose for Christeson's execution; (4) the shelf life of the alleged compounded pentobarbital to be used on Christeson, and whether the dose will have expired by the time Christeson is executed; and (5) whether the alleged compounded pentobarbital to be used on Christeson was mixed correctly and is neither sub-potent nor super-potent. These concerns are valid, particularly in light of the evidence put forward by Christeson as to what harm could occur if the drug is improperly compounded, or is compounded with bad source materials. These concerns warrant a stay of execution so that Christeson may determine whether the alleged compounded pentobarbital to be used to effectuate his death will lead to a rapid and painless death, or a death which violates his Eighth Amendment Rights.

Christeson also raises concerns about the administration of a sedative prior to, or as part of, his execution. Missouri assures this court Christeson will determine whether or not he is administered the sedative midazolan, yet troubling questions remain regarding whether the doses of midazolan used by Missouri are safe. See Ringo v. Roper, 766 F.3d 880, 881-84 (8th Cir. 2014) (en banc) (Bye, J., dissenting). Any sedative used prior to the execution of the death warrant should not be administered in such doses it could be deadly to an inmate and should not be administered as to render an inmate incompetent before a death warrant is active. Any sedative used as part of the execution protocol should be disclosed to Christeson in a timely manner so he may determine whether such use comports with the Eighth Amendment.

Nothing Christeson asks for would place an undue burden on Missouri. He simply seeks transparency concerning the manufacturer of the chemical used to execute a death sentence and testing of the chemical for identity, potency, purity, and contamination. Considering the enormity of the issues at stake, this is a burden which is entirely due. The Supreme Court "has long acknowledged that death is fundamentally different in kind from any other punishment." Woodward v. Alabama, 134 S. Ct. 405, 406 (2013) (Sotomayor, J., dissenting). In fact, it is the most severe penalty permitted by law. See Gregg v. Georgia, 428 U.S. 153, 187 (1976) ("There is no question that death as a punishment is unique in its severity and irrevocability."); see also Furman v. Georgia, 408 U.S. 238, 289 (1972) (Brennan, J., concurring) ("The unusual severity of death is manifested most clearly in its finality and enormity."). Since Christeson asks for nothing more than information about the chemicals set to be injected into his own body, no undue burden has been placed on Missouri.

Particularly in light of Missouri's storied history of ignoring death row inmates' constitutional rights to federal review of their executions, see Zink v. Lombardi, No. 13-1664 (8th Cir. Dec. 23, 2013) (en banc) (Bye, J., dissenting), I would stay Christeson's execution in order he be allowed to access information and testing so he could determine whether or not his constitutional rights will be violated at the time of his death.

_____

October 24, 2014

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
/s/ Michael E. Gans